In the Matter of Nicholas FORNABAI individually and trading as Fornaby Equipment Company, Bankrupt.

No. B-325-62.

United States District Court
D. New Jersey.
Feb. 28, 1964.

David M. Satz, Jr., U. S. Atty., Martin Tuman, Asst. U. S. Atty., by Maurice Adelman, Jr., Attorney, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Fred B. Ugast, Maurice Adelman, Jr., Attorneys, Department of Justice Washington, D. C., on the brief, for petitioner.

Louis Kraemer, Newark, N. J., for Pak-Mor Mfg. Co.

Evans, Hand, Evans, Allabough & Amoresano, Paterson, N. J., for Truck Equipment Corporation. Louis Kraemer, Newark, N. J., on the brief, for respondents.

SHAW, District Judge.

This matter comes before the Court. pursuant to the provisions of 11 U.S.C.A. § 67, subs. c, a(8) on Petition for Review of an order by the Referee in Bankruptcy. The order of the Referee in Bankruptcy dated June 4, 1963 determined that two judgment liens were entitled to priority in satisfaction over tax liens of the United States of America out of a real estate fund being administered by the Court.

The pertinent facts may be recited briefly as follows: On May 2, 1962 Nicholas Fornabai individually and doing business as Fornaby Equipment Co. was adjudicated a bankrupt in a Chapter XI proceeding. The realty of the bankrupt was sold and valid liens against the realty transferred to the proceeds of the sale. The amount thereof held by the Trustee in Bankruptcy is insufficient for full satisfaction of all valid liens.

The parties here involved, who assert liens against the proceeds of the sale of realty by virtue of judgments obtained against the bankrupt are Truck Equipment Corp. and Pak-Mor Manufacturing Co. The lien of the United States is for taxes assessed against the bankrupt pursuant to provisions of the Internal Revenue Code of 1954. Truck Equipment

Corporation recovered a judgment in the Superior Court of New Jersey against the bankrupt on December 8, 1960. The amount is $13,716.85 plus interest. Pak-Mor Manufacturing Co. recovered its judgment against the bankrupt in the United States District Court for the District of New Jersey on March 10, 1961. The amount of this judgment is $18,199.-61 plus interest. Both judgments were docketed as of the dates of recovery thereof. The United States filed notice of tax liens against the bankrupt on the following dates and in the amounts stated:

| | | |
|---|---|---|
| (1) | April 10, 1961 ........ | $ 8,272.28 |
| (2) | June 20, 1961 ........ | 9,495.72 |
| (3) | August 24, 1961 ....... | 13,744.33 |
| (4) | February 14, 1962 ..... | 4,333.58 |
| (5) | March 16, 1962 ........ | 722.01 |
| (6) | April 12, 1962 ........ | 3,166.70 |

The precise question presented is whether the liens of the two judgment creditors above mentioned were perfected in the sense that they became choate liens on the realty of the bankrupt prior to the date when the United States filed its notice of tax liens. If so, the judgment liens are entitled to priority.

A judgment docketed in the Superior Court of New Jersey is a lien upon all real estate of the judgment debtor located within the State of New Jersey from the date the judgment is docketed. N.J.S.A. 2A:16–1. Venetsky v. West Essex Building Supply Co., 28 N.J.Super. 178, 100 A.2d 291 (App.Div.1953).

By federal statute it is provided with respect to judgments of the United States District Court that:

> "Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. * * *" 28 U.S.C.A. § 1962.

Taxes assessed against a taxpayer pursuant to the provisions of the Internal Revenue Code of 1954 become liens in favor of the United States upon all property and rights to property belonging to the taxpayer. 26 U.S.C.A. § 6321 But the lien for taxes is not valid "as against any mortgagee, pledgee, purchaser, or *judgment creditor* until notice thereof has been filed." (Emphasis supplied.) 26 U.S.C.A. § 6323. As noted above, the earliest date on which the Government filed notice of a tax lien was April 10, 1961.

Federal law determines which secured creditors are judgment creditors for purposes of protection under Section 6323. United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955); Stevan v. Union Trust Co., 115 U.S.App.D.C. 36, 316 F.2d 687 (1963).

In the case of United States v. Gilbert Associates, Inc., supra, the Supreme Court stated:

> "Congress enacted § 3672 (now 26 U.S.C.A. 6323) to meet the harsh condition created by the holding in United States v. Snyder, 149 U.S. 210, [13 S.Ct. 846, 37 L.Ed. 705], when federal liens were few, that a secret federal tax lien was good against a purchaser for value without notice.
>
> "A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a 'judgment creditor' should have the same application in all the states. In this instance, we think Congress used the words 'judgment creditor' in § 3672 in the usual, conventional sense of a judgment of a court of record, since all states have such courts."

The priority of a lien created by state law over a tax lien of the federal

government depends on the time it attached to the property in question and became choate. It is perfected to the point of being a choate lien "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. Pioneer American Insurance Co., 374 U.S. 84, 88, 89, 83 S.Ct. 1651, 1655, 10 L.Ed. 2d 770 (1963).

Each of the judgments here were recovered in a court of record and docketed therein. The identity of each judgment lienor, the property subject to the judgment lien and the amount thereof has been established. Nevertheless, the Government contends that neither of the judgments imposed a choate lien upon realty of the bankrupt because neither of the judgment creditors caused a writ of execution to issue against the real estate of the bankrupt. In support of its argument, the Government cites N.J.S.A. 2A:17–39 which reads as follows:

"SALE OF REAL ESTATE FREE OF LIEN OF JUDGMENTS OR RECOGNIZANCES ON WHICH EXECUTIONS NOT ISSUED

"Whereas, *other judgments*, and *recognizances*, besides those, or some of those, by virtue whereof the sale aforesaid was made, might affect the real estate so sold, if no provision be made to remedy the same, and whereas, the persons who have not taken, or will not take out executions upon their judgments, or recognizances, ought *not to hinder or prevent such as do take out executions from having the proper effect and fruits thereof*, therefore, in any such case, the purchaser, his heirs and assigns, shall hold the lands, tenements, hereditaments, and real estate by him or her purchased as aforesaid, free and clear of all other judgments and recognizances, whatsoever, on or by virtue of which no execution has been taken out and executed on the real estate so purchased." (Emphasis supplied.)

■ The effect and purpose of the above cited statutory provision is misconstrued. A writ of execution on a judgment does not create the lien; it is merely the procedural means by which the judgment creditor obtains satisfaction out of the proceeds of the sale of realty. In the early case of Buchannan v. Rowland, 5 N.J.L. [721], 845 (1820) at page 860 [735] it was stated:

"A judgment is a lien and there is no magic in the term *execution unexecuted;* it creates no new or additional lien on the lands; it gives power to the sheriff to seize on and dispose of * * * lands of the defendant * * *"

See also Giordano v. Wolcott, 46 N.J. Super. 278, 134 A.2d 593 (App.Div.1957) where the Court cited the Buchannan case stating:

"An execution does not rise to a higher status than its underlying judgment and has no independent obligating vitality."

■ It is clear from the language of the statutory provision upon which the Government relies, and the judicial interpretation of it over many years that its provisions were intended to apply only to priority inter se among those holding liens by judgment or recognizance and that it has no effect in the determination of priority of lien holders other than those mentioned. It creates an exception to the Common Law rule of "the first in time is the first in right," [1] in favor of a subsequent judgment creditor who has issued execution on the judgment and the reason for the exception is clearly stated in the statute. In the early case of Clement v. Kaighn, 15 N.J.Eq. 47 (Chancery 1862), the Court stated that a judgment shall bind the lands of a defendant from the time of actual entry of the judgment on the record of the Court, but that the purpose of the statutory exception among judgment creditors was to give a junior judgment creditor whose execution was first sued out the "proper

1. United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

effect and fruits thereof." Also see Vansciver v. Bryan, 13 N.J.Eq. 434 (Chancery 1861); Wills v. McKinney, 41 N.J.L. 120 (Sup.Ct.1879); Silver v. Williams, 72 N.J.Super. 564, 178 A.2d 649 (App. Div.1962).

It would be manifestly inequitable if a senior judgment creditor were permitted to stand by while a junior judgment creditor incurred the expense in issuance of a writ of execution, levy upon, and sale of lands of a defendant, and then step in to share first in the proceeds. This would deny the junior lien holder who proceeded with diligence "the proper effect and fruits thereof."[2] It was this inequity in procedural enforcement affecting judgment creditors and liens attaching by recognizance that the State Legislature recognized and sought to correct. Application of the provisions of the statute to priority status of liens other than those existing by virtue of judgment or recognizance would rest upon an interpretation which the plain language of the statutory provision does not support and one which finds no sanction by weight of judicial precedent in the state courts.

There is no rational basis upon which the Government can equate its tax lien in this instance with a judgment lien or recognizance for purposes of claiming the benefit of the provisions of N.J.S.A. 2A:17–39. Its position might be analogous to that of a judgment creditor who had issued execution on a judgment, if it had been *first* to take action to enforce the tax lien against realty of the taxpayer pursuant to the provisions of Title 26 U.S.C.A. § 7403. But that is not the case here. The mere filing of its notice of tax lien without further action to subject property of the taxpayer to payment of the tax liability, does not give the Government a status analogous to that of a judgment creditor who has issued a writ of execution to satisfy a judgment. Accordingly, as between the Government holding a tax lien by virtue of

assessment and notice filed and a judgment creditor who has not issued a writ of execution, the common law rule of "the first in time is the first in right," is the applicable rule. See United States v. New Britain, supra.

Moreover, it might be stated as a matter of practical observation, that if the provisions of 26 U.S.C.A. § 6323 in favor of prior judgment creditors were to have no application until the property in question was in the process of sale to satisfy a judgment, the limited effect thereof on judgment liens generally would render the intended benefits sterile. This indeed would be a narrow interpretation of a remedial statute with emphasis upon local procedures to enforce satisfaction of a lien rather than upon the substantive right created by the lien.

It is recognized that what is stated here is not in accord with the conclusions reached in the case of Smith v. Smith, 78 N.J.Super. 28, 187 A.2d 367 (Superior Ct. 1963). The court in that case held that a federal tax lien, notice of which was filed subsequent to the entry of a money judgment in a court of record, had priority over the judgment lien. The court stated with respect to the judgment lien "that the competing lien must have attached to specific property" and that it did not attach to specific property until a levy by the judgment creditor was made upon the property. This court disagrees. A judgment entered in the Superior Court of New Jersey is a lien upon all real estate within the jurisdiction of the court from the date of entry thereof. N.J.S.A. 2A:16–1; Venetsky v. West Essex Building Supply Co., supra. The judgment creates the substantive right of lien, not the writ of execution.

Accordingly, the determination by order of the Referee in Bankruptcy that the two judgment creditors have priority of lien over the federal tax liens is affirmed. An appropriate order in accordance herewith will be submitted.

2. N.J.S.A. 2A:17–39.